# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 13, 2015          Decided July 10, 2015

No. 13-7196

WILMA ELEY,
APPELLEE

v.

DISTRICT OF COLUMBIA,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00309)

---

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General of the District of Columbia, argued the cause for the appellant. *Irvin B. Nathan*, Attorney General at the time the brief was filed, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were with him on brief.

*Douglas W. Tyrka* argued the cause and filed the brief for the appellee.

*Bruce J. Terris*, *Carolyn Smith Pravlik*, and *Kathleen L. Millian* were on brief for *amici curiae* The Class Members In *Salazar v. District of Columbia* in support of the appellee.

Before: HENDERSON and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* KAVANAUGH.

KAREN LECRAFT HENDERSON, *Circuit Judge*: After Wilma Eley prevailed in her lawsuit against the District of Columbia (District) alleging a violation of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq*., the district court awarded her $62,225 in attorneys' fees and costs for approximately one hundred hours of work. Although the District lodged a variety of challenges to the award in the district court, its sole objection on appeal is to the prevailing market rate that court used in its calculation. Specifically, the District argues that the district court abused its discretion when it adopted Eley's proposed fee matrix, setting the prevailing market rate for her lawyer's services well beyond the next highest hourly rate used by district courts in IDEA litigation. For the reasons set forth below, we vacate the district court's fee award and remand.

## I. BACKGROUND

The IDEA requires the District to provide disabled children with a "free appropriate public education." 20 U.S.C. § 1400(d)(1)(A); *see also id.* § 1412(a)(1) (free appropriate public education "available to all children with disabilities . . . between the ages of 3 and 21, inclusive"). If the District fails to do so, the child's parents can file an administrative complaint with the District Office of the State Superintendent of Education (Superintendent's Office). *Id.*

§ 1415(b)(6).[1]  And if the administrative-complaint route fails, the parents can sue the District in district court.  *See id.* § 1415(i)(2)–(3).

If the parents' lawsuit succeeds, the court, "in its discretion, may award reasonable attorneys' fees."  *Id.* § 1415(i)(3)(B)(i)(I).  An IDEA fee award "shall be based on rates *prevailing in the community* in which the action or proceeding arose for the *kind and quality* of services furnished."  *Id.* § 1415(i)(3)(C) (emphases added).  Thus, if the court finds that "the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for *similar services* by attorneys of reasonably comparable skill, reputation, and experience," it "shall reduce . . . the amount of the attorneys' fees awarded."  *Id.* § 1415(i)(3)(F)(ii) (emphasis added).

The IDEA provides no further guidance for determining an appropriate fee award.  In *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), however, the United States Supreme Court laid the foundation for the three-part analysis that this Court has since developed.  First, the court must determine the "number of hours reasonably expended in litigation."  *Save Our Cumberland Mountains, Inc. v. Hodel (SOCM)*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (*en banc*).[2]  Second, it must set

---

[1]  *See also* D.C. Code § 38-2601.01 (Superintendent's Office "perform[s] the functions of a state education agency for the District of Columbia under applicable federal law").

[2]  We apply the respective analyses from *Blum* and *SOCM* notwithstanding both cases involved different attorneys' fees statutes.  *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n.2 (1989) ("[F]ee-shifting statutes' similar language is a strong indication that they are to be interpreted alike." (quotation marks omitted)).

the "reasonable hourly rate." *Id.* Finally, it must determine whether use of a multiplier is warranted. *Id.* The "fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates" and the opposing party remains "free to rebut a fee claim." *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995).

Here, the District no longer challenges the hours Eley's lawyer spent litigating her IDEA case, and the IDEA prohibits application of any "bonus or multiplier," 20 U.S.C. § 1415(i)(3)(C). Accordingly, we move to the second prong of the *SOCM* analysis—the reasonable hourly rate. Whether an hourly rate is reasonable turns on three sub-elements: (1) "the attorney['s] billing practices," (2) "the attorney['s] skill, experience, and reputation" and (3) "the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. Of these three sub-elements, the District contests only the prevailing market rate in the relevant community.

Determining the prevailing market rate is "inherently difficult." *Blum*, 465 U.S. at 895 n.11. Even so, "[t]he complexity of the market for legal services does not . . . reduce the importance of fixing the prevailing hourly rate in each particular case with a fair degree of accuracy." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982). Thus, a fee applicant must "produce satisfactory evidence—*in addition to* the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11 (emphasis added); *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1325 ("An applicant is required to provide *specific* evidence of the

prevailing community rate for the type of work for which he seeks an award." (emphasis added)).

We allow a fee applicant to submit attorneys' fee matrices as one type of evidence that "provide[s] a useful starting point" in calculating the prevailing market rate. *Covington*, 57 F.3d at 1109. The most commonly used fee matrix is the "*Laffey* Matrix"—the schedule of prevailing rates compiled in *Laffey v. Northwest Airlines, Inc. (Laffey I)*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, *Laffey v. Nw. Airlines, Inc. (Laffey II)*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds, SOCM*, 857 F.2d 1516. *See Covington*, 57 F.3d at 1109. *Laffey I* established (and *Laffey II* affirmed) the following schedule for lawyers who practice "complex federal litigation":

> —$175 an hour for very experienced federal court litigators, *i.e.*, lawyers in their 20th year or more after graduation from law school;
>
> —$150 an hour for experienced federal court litigators in their 11th through 19th years after law school graduation;
>
> —$125 an hour for experienced federal court litigators in their 8th through 10th years after graduation from law school;
>
> —$100 an hour for senior associates, *i.e.*, 4 to 7 years after graduation from law school; and
>
> —$75 an hour for junior associates, *i.e.*, 1 to 3 years after law school graduation.

*Laffey I*, 572 F. Supp. at 371–72; *Laffey II*, 746 F.2d at 8 n.14.

Fee matrices in general are "somewhat crude" and the *Laffey* Matrix in particular "lumps attorneys with four to seven years of experience in the same category" as well as "attorneys with eleven to nineteen [years]." *Covington*, 57 F.3d at 1109. For this reason, a fee applicant supplements fee matrices with other evidence such as "surveys to update the[m]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* Additionally, because the original *Laffey* Matrix is now more than thirty years old, it must be updated to account for inflation. *See SOCM*, 857 F.2d at 1525. Competing updated *Laffey* Matrices have developed, two of which are at issue here. Both have their benefits and limitations.

The first *Laffey* Matrix is maintained and updated by the District United States Attorney's Office (USAO *Laffey* Matrix). *See* USAO Laffey Matrix – 2014-2015, *available at* http://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf. The USAO *Laffey* Matrix starts with "[t]he hourly rates approved in *Laffey* . . . for work done principally in 1981–82" as its baseline. *Id.* ¶ 3. It adjusts these rates to account for inflation by using the Consumer Price Index for All Urban Consumers (CPI-U) of the United States Bureau of Labor Statistics. *Id.* The CPI-U measures inflation across "100,000 commodities including food, fuel, and housing" for a given geographic area—here, the Washington, D.C area. *Amicus* Br. 4. Yet, "[l]ess than 0.325 percent of the data" in the CPI-U "involves legal services." *Id.* And according to the district court, the CPI-U "shows that the cost of legal services nationally has far outstripped the increase in overall prices." *Eley v. Dist. of Columbia (Eley II)*, 999 F. Supp. 2d 137, 153 (D.D.C. 2013);

*see also id*. ("The nationwide cost of legal services has jumped ninety-one percent, nearly twice as much as the general CPI"). During Eley's IDEA litigation, the USAO *Laffey* Matrix suggests that a litigator specializing in complex federal litigation with 11 to 19 years' experience should receive between $420 and $445 per hour.

Because the USAO *Laffey* Matrix relies on inflation in general rather than legal-services inflation specifically, its critics have advocated, to some degree of success,[3] for a competing *Laffey* Matrix (LSI *Laffey* Matrix) that uses the Legal Services Index of the Bureau of Labor Statistics to adjust for inflation. Developed by Michael Kavanaugh, an economist from Hawaii, the LSI *Laffey* Matrix adjusts for the increases in costs for legal services only. It suffers, however, from its own imprecisions. Rather than tracking inflation levels specific to Washington, D.C., the LSI *Laffey* Matrix tracks the *national* rate of change in the cost of legal services. During Eley's IDEA litigation, the LSI *Laffey* Matrix suggests that a litigator specializing in complex federal litigation with 11 to 19 years' experience should receive $625 per hour.[4]

---

[3] *See, e.g.*, *Salazar v. Dist. of Columbia*, 123 F. Supp. 2d. 8, 15 (D.D.C. 2000) (LSI *Laffey* Matrix "more accurately reflects the prevailing rates for legal services in the D.C. community").

[4] There are other differences between the USAO *Laffey* Matrix and the LSI *Laffey* Matrix. *See generally Amicus* Br. 8–14 (comparing two matrices in greater depth). For example, the LSI *Laffey* Matrix uses as its starting point the rates established in 1989 after our *en banc* decision in *SOCM* rather than the "hourly rates approved in *Laffey*" that "were for work done principally in 1981–82." *See* Laffey Matrix – 2014–2015, *supra*, ¶ 3; *see also SOCM*, 857 F.2d at 1525 (discussing *Laffey* Matrix and suggesting parties develop "a similar schedule of prevailing community rates for other relevant years").

On September 13, 2010, Eley filed an administrative complaint with the Superintendent's Office, alleging that the District violated the IDEA by failing to place her special-needs child in an appropriate public school. A hearing officer denied her claim but Eley successfully challenged the denial in district court. *See Eley v. Dist. of Columbia (Eley I)*, No. 1:11-cv-309, 2012 WL 3656471, at *1 (D.D.C. Aug. 24, 2012). After concluding that Eley was entitled to reimbursement for the money she spent on her child's education, the district court remanded her case to the Superintendent's Office, which awarded her $2,850.

Eley then filed a motion for attorneys' fees and costs, seeking $62,225 for 97.5 hours of work (approximately one-third of which occurred at the administrative stage) and 3 hours of travel, as well as $350 for filing fees. To arrive at this figure, Eley used the prevailing market rate set forth in the LSI *Laffey* Matrix, which reflected that her lawyer should receive $625 per hour. To support her use of the LSI *Laffey* Matrix, Eley submitted a verified statement from her lawyer, averring that:

- his firm has "always" charged the hourly rates in the LSI *Laffey* Matrix;

- "[t]he current hourly rate for [his] time is $625.00 per hour";

- his firm had settled cases in which the District "paid the firm 99.9% of what was billed" after applying a statutory fee cap;

- "[t]he expenses in [his] itemization are the charges customarily paid in this field in this jurisdiction";

- "at least 95% of [his] practice has been in the field of special education law"; and in his "conservative and educat[ed] estimate," he has "litigated over 1000 IDEA administrative cases and over 20 IDEA federal cases."

Verified Statement of Douglas Tyrka ¶¶ 7–9, 15. Eley also submitted her lawyer's verified time sheets and a declaration of Michael Kavanaugh (prepared for a different case), explaining the methodology Kavanaugh used to generate the LSI *Laffey* Matrix. The District contested Eley's attorneys' fees request, arguing that the district court should award $749.25 only. In so doing, it cited over forty cases in which district courts had awarded attorneys' fees awards in IDEA cases based on prevailing market rates set at (or below) the USAO *Laffey* Matrix, not one of which exceeded $425 per hour. In contrast, Eley cited only four cases in which district courts had used the LSI *Laffey* Matrix, none of which involved IDEA litigation.

The district court referred Eley's motion to a magistrate judge, who declined to use the $625 figure from the LSI *Laffey* Matrix. He reasoned that Eley failed to submit evidence demonstrating entitlement to an "elevated hourly rate." R & R 8–9. Starting instead with the rates in the USAO *Laffey* Matrix (between $420 and $445 per hour), the magistrate reduced those rates by twenty-five per cent (between $315 to $333.75) in accordance with other IDEA cases. *See* R & R 9–10 (discussing *Rooths v. Dist. of Columbia*, 802 F. Supp. 2d 56, 62–63 (D.D.C. 2011); *McClam v. Dist. of Columbia*, 808 F. Supp. 2d 184, 190 (D.D.C. 2011)). Because the *Laffey* Matrix was created for "*complex* federal litigation in the District of Columbia" and it contains presumptive maximum rates, *id.* at 9 (emphasis added), the magistrate found the maximum *Laffey* rates "not

appropriate" for Eley's IDEA litigation, *id.* at 10. Multiplying the number of hours by his chosen hourly rate, the magistrate recommended that Eley receive $40,620.32 in fees and costs.

Both sides objected to the magistrate's report and recommendation. Eley challenged the magistrate's choice of prevailing market rate, and the District attacked on multiple fronts, urging the district court to reduce the award from $40,620.32 to no more than $2,900.62. The district court largely ruled in favor of Eley. The court first compared the USAO and LSI *Laffey* Matrices, ultimately deciding to use the LSI *Laffey* Matrix. Despite the "major criticism" that the LSI *Laffey* Matrix is "only indicative of 'the prevailing market rates for attorneys engaged in complex federal litigation in the "big firm" context,' " *Eley II*, 999 F. Supp. 2d at 154 (quoting *Heller v. Dist. of Columbia*, 832 F. Supp. 2d 32, 45 (D.D.C. 2011) (alterations omitted)), the court observed that *Blum* and *SOCM* held, respectively, that nonprofit lawyers and lawyers who charge reduced rates for certain types of litigation are entitled to receive the same prevailing market rate as private counsel who prevail in "equally complex Federal litigation." *Id.* at 155 (citing *Blum*, 465 U.S. at 895; *SOCM*, 857 F.2d at 1524). At bottom, the court concluded that Eley's lawyer's verified statement, "as well as [Kavanaugh's] declaration explaining the methodology and rationale for the updated rates," demonstrated that the LSI *Laffey* Matrix was "an appropriate measure of the prevailing community rates for attorneys in the Washington, D.C. area." *Id.* at 156.

Next, the district court rejected the District's argument that "IDEA cases do not represent sufficiently complex federal litigation to warrant the presumptive use of the USAO matrix as the prevailing market rate, let alone the LSI-adjusted rates requested by [Eley]." *Id.* at 157. It did so after

concluding that "some version of the *Laffey* matrix is presumptively reasonable in civil rights litigation," that "a complexity determination is not the dispositive question as to whether such rates apply" and that, in any event, nothing in D.C. Circuit precedent "indicates that IDEA cases, as a subset of civil rights litigation, fail to qualify as 'complex' federal litigation." *Id.* at 159. In ordering the District to pay the full $62,225 requested by Eley, the court noted that the "complexity of [a] case is accounted for by the number of hours expended" and "should not be accounted for by a blunt reduction of rates before applying the rates to the number of hours expended." *Id.* at 160. The District timely appealed.

## II. ANALYSIS

We review the district court's fee award for abuse of discretion, *King v. Palmer*, 950 F.2d 771, 785 (D.C. Cir. 1991) (*en banc*), and will not upset its hourly rate determination "absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence." *Kattan ex rel. Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993), *as amended* (June 30, 1993). "This limited standard of review is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Covington*, 57 F.3d at 1110 (quotation marks omitted). At the same time, we "examine *de novo* whether the district court applied the correct legal standard." *Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012).

As noted, Eley had the burden "to produce satisfactory evidence—*in addition to [her] attorney's own affidavits*—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." *Covington*, 57 F.3d at 1109 (quoting *Blum*, 465 U.S. at 895 n. 11). In *Covington*, this Court held that the "plaintiffs clearly met their burden and their requested rates were properly accorded a presumption of reasonableness." *Id.* at 1110. We so held because the plaintiffs submitted not only "data demonstrating their attorneys' experience in the legal profession and in litigating complex federal court cases, as well as information probative of their attorneys' skill and reputation," they also submitted "a great deal of evidence regarding prevailing market rates for complex federal litigation," including "the *Laffey* matrix, the U.S. Attorney's Office matrix, affidavits attesting to increases in the market rates since the original *Laffey* matrix" and, importantly, "memorandum opinions in district court cases which relied on these matrices." *Id.* In rebuttal, the District failed to cite any relevant cases supporting its requested rates. *Id.* at 1111. For this reason, this Court rejected the District's argument that "a civil rights and employment discrimination market actually exists independent of attorneys who handle other types of complex federal litigation" and that this market charges rates "lower than the prevailing rates in the broader legal market." *Id.*

Here, however, the reverse is true. Eley's evidentiary submission consisted of the LSI *Laffey* Matrix, Kavanaugh's declaration explaining the LSI *Laffey* Matrix and her lawyer's verified statement averring that he charged his paying clients the rates in the LSI *Laffey* Matrix. Absent from her submission, however, is evidence that her "requested rates are in line with those prevailing in the community for *similar services*," *i.e.*, IDEA litigation. *Id.* at 1109 (emphasis added); *see also* 20 U.S.C. § 1415(i)(3)(C) (IDEA fee awards "shall be based on rates prevailing in the community . . . for the kind and quality of services furnished"). Indeed, Eley directed the district court to only four cases that had employed the LSI

*Laffey* Matrix—none of which was an IDEA case. The District, on the other hand, cited more than *forty* IDEA cases in which IDEA plaintiffs had received attorneys' fees awards based on prevailing hourly rates at least $180 lower than the $625 rate applied by the district court here.[5] On this record, Eley has not met her burden of "justifying the reasonableness of the rates." *Covington*, 57 F.3d at 1107.

We conclude that, in relieving Eley of her burden, the district court abused its discretion. It relied on *Blum* and *SOCM* but neither case establishes that the rates charged by lawyers in the largest law firms automatically set the prevailing market rate for IDEA litigation. Instead, *Blum* and *SOCM* held only that legal aid lawyers (*Blum*), lawyers in nonprofit law firms (*Blum*) and lawyers who charge either reduced rates or on a *pro bono* basis (*SOCM*) should receive fees based on the prevailing market rate charged by for-profit lawyers *if* they are doing *the same type of litigation*. Implicit in both cases is the assumption that the legal aid and non-profit lawyers are engaged in litigation that is "equally complex" to that of their for-profit counterparts. *Blum*, 465 U.S. at 893; *see also SOCM*, 857 F.2d at 1524. But absent is any record evidence, other than the fee applicant's declaration, demonstrating that IDEA litigation is as complex

---

[5] We do not mean to suggest that a fee applicant must always cite fee orders issued in other cases; rather, evidence of the prevailing market rate can take many forms. *See, e.g.*, *Covington*, 57 F.3d at 1113 (Henderson, J., dissenting) ("A statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain sub-market of legal services would be powerfully persuasive." (emphasis omitted)). Here, the prevailing market evidence proffered by both sides (save for the competing *Laffey* Matrices and Eley's lawyer's billing information) consists solely of awards made by other district courts.

as the type of litigation that supports the "enhanced" hourly rates in the LSI *Laffey* Matrix.

Nor is it an answer to rely on the fact that our precedent does not "indicate[] that IDEA cases, as a subset of civil rights litigation, fail to qualify as 'complex' federal litigation." *Eley II*, 999 F. Supp. 2d at 159. Indeed, this reasoning flips the burden of persuasion on its head. By concluding that "some version of the *Laffey* matrix is presumptively reasonable," settling on the LSI *Laffey* Matrix and applying it because no evidence was produced *disproving* that IDEA litigation is sufficiently "complex," *id.*, the district court erred in not requiring Eley to demonstrate that her suggested rate was "in line with those prevailing in the community for similar services." *Covington*, 57 F.3d at 1109 (quoting *Blum*, 465 U.S. at 895 n.11). We do not decide today whether IDEA litigation is in fact sufficiently "complex" to use either version of the *Laffey* Matrix (and if so, which version of the *Laffey* Matrix is more appropriate).[6] But the obligation was Eley's to demonstrate that her

---

[6] *See Price v. Dist. of Columbia*, No. 14-7133, 2015 WL 3916444, at *4 (D.C. Cir. June 26, 2015) (Brown, J., concurring) ("[T]he *Laffey* Matrix rate . . . is . . . an irrelevant benchmark for administrative proceedings before a D.C. Public Schools . . . hearing officer."); *see also id.* (fee applicants "are entitled to the *Laffey* rate only if they can establish that the relevant legal market in this action, namely representation in IDEA administrative due process hearings, is subject to the same hourly rates that prevail in complex federal litigation. Absent such a finding, *Laffey* Matrix rates are irrelevant to the prevailing-rate determination." (citations, quotation marks and alteration omitted)). *See generally id.* at *5 ("[W]hen courts are too generous in awarding fees, they create an incentive for needless conflict and enrich IDEA lawyers at the expense of public schools, and ultimately the very children the IDEA seeks to protect.").

suggested rates were appropriate. Because she was not required to do so, the district court, we conclude, "clear[ly] misappli[ed] . . . legal principles" and thus abused its discretion. *Kattan*, 995 F.2d at 278.

For the foregoing reasons, we vacate the district court's fee award and remand for proceedings consistent with this opinion.

*So ordered.*

KAVANAUGH, *Circuit Judge*, concurring: I join the Court's opinion. I would simply add that, in my view, the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases.