TATEL, Circuit Judge,
concurring:
Attorneys seeking compensation under the Individuals with Disabilities Education Act are entitled to reasonable fees, 20 U.S.C. § 1415(i)(3)(B)(i), and bear the burden of demonstrating that the rates they seek are consistent with those “prevailing in the .community in which the action or proceeding arose for the kind and quality of services furnished,”, id. § 1415(i)(3)(C). A reasonable fee is “one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys.” Blum v. Stenson, 466 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citation, alterations, and internal quotation marks omitted).
In complex cases — such as antitrust, school desegregation, Title VII, and Fourth Amendment suits, see id. at 893-94, 104 S.Ct. 1541 — we and our district court colleagues have long accepted Laffey matrices as evidence of prevailing market rates. See Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (“In order to demonstrate [the prevailing market rate], plaintiffs may point to such evidence as an updated version of the Laf-fey matrix or the U.S. Attorney’s Office [Laffey] matrix — ”). Since the Laffey matrix was first used in a Title VII case in 1983, see Laffey v. Northwest Airlines, Inc., 572 F.Supp. 354, 371 (D.D.C. 1983), courts in this circuit have awarded Laffey rates in a wide variety of complex litigation, including suits arising under the First Amendment, see Covington, 57 F.3d at 1103, the Americans with Disabilities Act, see id. the Rehabilitation Act, see Berke v. Federal Bureau of Prisons, 942 F.Supp.2d 71, 77 (D.D.C. 2013), the Freedom of Information Act, see ACLU v. Department of Homeland Security, 810 F.Supp.2d 267, 277 (D.D.C. 2011), and the Second Amendment, see Heller v. District of Columbia, 832 F.Supp.2d 32, 48 (D.D.C. 2011).
Last year, in Eley v. District of Columbia, 793 F.3d 97 (D.C. Cir. 2015), this court decided to treat IDEA cases differently. Instead of determining itself whether IDEA litigation warrants Laffey rates, the court held not only that fee applicants must present evidence “demonstrating that IDEA litigation is as complex as the type[s] of litigation” that have garnered Laffey rates, Eley, 793 F.3d at 105, but also that it would review a district court’s resolution of that issue for abuse of discretion, id. at 103-04.
It is true that fee applicants bear the burden of establishing the reasonableness of their rates and that district court fee awards are reviewed for abuse of discretion. Copeland v. Marshall, 641 F.2d 880, 901 (D.C. Cir. 1980) (“[A]n attorney’s fee award by the District Court will be upset on appeal only if it represents an abuse of *528 discretion”)- But whether a particular rate in a particular case is reasonable is a fundamentally different question from whether IDEA litigation, as a type of legal work, is- complex enough to merit Laffey rates. The former involves a fact-intensive, case-specific analysis of the prevailing lawyer's qualifications and experience. By contrast, the latter hinges not on the circumstances of any particular case, but rather on an assessment of the nature of IDEA litigation generally, as compared to, say, Title VII, Rehabilitation Act, or ADA litigation, each of which has commanded Laffey rates. Although this comparison requires consideration of how plaintiffs prove their cases, it is in the end a legal question that cannot depend — as Eley requires — on whether one lawyer has met her burden of proof or, for that matter, on the inevitably varying views of district courts based on the records before them. Compare Reed v. District of Columbia, 134 F.Supp.3d 122, 129-30 (D.D.C. 2015) (holding that plaintiffs had not met their burden under Eley), with Merrick v. District of Columbia, 134 F.Supp.3d 328, 338-40 (D.D.C. 2015) (holding that plaintiffs had met their burden). Either IDEA litigation is as complex as Title VII, Rehabilitation Act, and ADA litigation, or it is not — a question this court is best equipped to resolve. ,
Take, for example, Title VII litigation. During the past ten years, we have considered more than 200 Title VII cases and almost 30 IDEA claims. In the process, we have wrestled with the two statutes and their regulations, reviewed an enormous variety of evidentiary records, read hundreds of briefs, and observed the performance of many lawyers — some more skilled than others. Based on my own experience hearing dozens of these cases and authoring opinions in many, I think it quite obvious that IDEA litigation is as complex as Title VII litigation,
Like Title VII litigation, IDEA litigation arises under a complicated statutory framework, supplemented by detailed regulations. See, e.g., K.A. ex rel. F.A. v. Fulton County School District, 741 F.3d 1195, 1201 (11th Cir. 2013) (describing the IDEA as “a .detailed, complex statute” with a “complex procedural apparatus” for ensuring a free, and appropriate education). One need look no further than the decisions of the Supreme Court to appreciate the thorny questions of statutory interpretation that lie at the heart of IDEA litigation. See, e.g., Winkelman ex rel. Winkelman v. Parma City School District, 550 U.S. 516, 519, 522, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007) (interpreting the IDEA’S “interlocking statutory provisions” to determine whether the statute “accords to parents rights of their own that can be vindicated in court proceedings”); Honig v. Doe, 484 U.S. 305, 308, 323, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (holding that the “stay-put” provision in the IDEA’S predecessor, the Education of the Handicapped Act, prevented schools from excluding students with disabilities from school for “disruptive conduct growing out of their disabilities”). We too have addressed many such issues. See, e.g., Leggett v. District of Columbia, 793 F.3d 59, 62 (D.C. Cir. 2015) (examining when a parent who “send[s] her child to a private school” may be reimbursed under the IDEA); Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 523 (D.C. Cir. 2005) (interpréting the IDEA’S remedial provision).
IDEA and Title VII litigation share many other complexities. Both involve sophisticated non-legal subjects: in Title VII litigation, statistics, employment testing, and workplace compensation; in IDEA litigation, child psychology, speech and language pathology, occupational therapy, physical therapy, and special education curricula. Both types of litigation rely heavily on experts in a variety of fields: in *529 Title VII, statisticians and psychologists; in IDEA, childhood development specialists, psychiatrists, pathologists, and experts in educational options for children with disabilities. Finally, both-types of litigation often involve complex organizations: large companies in Title VII cases; large public school systems (here DCPS) - in IDEA cases.
To be sure, many IDEA cases, like the ones at issue here, are relatively small. But that is also true of Title VII cases. See, e.g., Robbins v. District of Columbia, 650 Fed.Appx. 37 (D.C. Cir. 2016); Kelly v. Mills, No. 10-5049, 2010 WL 5110238 (D.C. Cir. Dec. 14, 2010). More important, even small IDEA claims require lawyers with non-legal knowledge and specialized legal skills, as the declarations in these cases demonstrate. See, e.g., Reed v. District of Columbia, No. 14-1887, ECF No. 18-2 at 1 (D.D.C. Aug. 13, 2015) (“Every [IDEA] case requires' knowledge of education policies, procedures, techniques, best practices, records, and administration .... A competent IDEA litigator must know enough [about specialized] disciplines to understand and critique evaluations, cross-examine experts, and work with one’s own experts”). IDEA cases,;moreover, can be as large, complex, and long-lasting as the most complicated Title VII cases. Compare Blackman v. District of Columbia, 633 F.3d 1088, 1089 (D.C. Cir. 2011) (describing the “latest ... chapter in the saga stretching back' at least forty years of families with disabled childrén seeking free appropriate public education from the District of Columbia with frequent repair to administrative and judicial remedy), urith Shea v. Kerry, 796 F.3d 42, 50-56 (D.C. Cir. 2015) (tracing the “long history” of a fourteen-year-old Title VII claim against the State Department),
For these reasons, were this panel not bound by Eley, I would hold, as a matter of law, that IDEA litigation is sufficiently complex to warrant Laffey rates. See Eley, 793 F.3d at 105 (Kavanaugh, J., concurring) (“[I]n my view, the United States Attorney’s Office Laffey matrix is appropriate for IDEA cases.”). Deeming IDEA litigation eligible for Laffey rates would comport with the Supreme Court’s instruction that a reasonable fee is one “adequate to attract competent counsel,” Blum, 465 U.S. at 893, 104 S.Ct. 1541 (citation omitted), thereby advancing Congress’s goal that “all children with disabilities” receive a free appropriate public education “designed to meet their unique needs.” Forest Grove School District v. T.A., 557 U.S. 230, 239, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009) (citation omitted).