*1089 Chief Judge SENTELLE filed an opinion announcing the judgment of the Court.
BROWN, Circuit Judge, and WILLIAMS, Senior Circuit Judge, each filed opinions concurring in the result.
SENTELLE, Chief Judge:
The District of Columbia appeals from an attorneys’ fee award pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (IDEA). The District contends, as it did in the district court, that the amount of the fee award ($1,454,030.22) unlawfully exceeds the statutory fee cap of $4000. The district court held that the statutory fee cap of $4,000 was not applicable to a class action as a whole, but instead limited fees to $4,000 for each individual student in the class. For the reasons set forth below, we agree and affirm the judgment of the district court.
Background
This appeal marks the latest — hopefully, the last or near last — chapter in the saga stretching back at least forty years of families with disabled children seeking free appropriate public education from the District of Columbia with frequent repair to administrative and judicial remedy. The history goes back at least to Mills v. Board of Education of the District of Columbia, 348 F.Supp. 866 (D.D.C.1972). Since Mills, the controversy has evolved through both individual and class actions, most recently in two consolidated class actions now before the court. Because the present appeal concerns only the discrete question of the propriety of the fee award, we will not rehash the extended substantive litigation.
In furtherance of the objectives of the IDEA, Congress has provided for the award of attorneys’ fees to prevailing parents of children with disabilities. Specifically:
(i) IN GENERAL — In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys’ fees as part of the costs—
(I) to a prevailing party who is the parent of a child with a disability.
20 U.S.C. § 1415(i)(3)(B). In many of the numerous actions against the District of Columbia, the courts awarded attorneys’ fees pursuant to the IDEA. Beginning in 1998, concerned about the substantial cost to the District, Congress enacted a rider to the FY 1999 annual appropriations act for the District of Columbia instituting the first of a series of attempts at capping the fees awarded. Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, § 130, Pub.L. No. 105-277, 112 Stat. 2681, 2681-138 to 2681-139 (1998). That first fee cap limited attorneys’ fee awards in actions against the District of Columbia Public Schools under the IDEA to the rate paid to appointed counsel representing indigent criminal defendants in the District of Columbia. The fee cap was continued in FY 2000 and FY 2001 without significant change. Although Congress made further changes, the enactment pertinent to this action came in legislation enacted for FY 2003 and subsequent years which departed from the formula tying the awards to rates for appointed criminal counsel and instead set a flat $4000 figure as the limitation for “the fees of an attorney who represents a party in an action ... under the Individuals with Disabilities Education Act....” [1] 2006 Dis *1090 trict of Columbia Appropriations Act § 122(a)(1); Pub.L. No. 109-115, 119 Stat. 2396, 2519 (2005), cont’d in effect, Revised Continuing Appropriations Resolution, § 101(a)(9), Pub.L. No. 110-5, 121 Stat. 8, 9 (2007).
Although the fee cap was lifted for proceedings initiated after the effective date of the 2009 appropriations act, the current litigation spans the period of the effectiveness of the cap legislation and is not affected by the termination of fee cap requirements. Therefore, the question before us depends upon construction of the fee cap legislation.
Plaintiffs initiated the Blackman class action litigation in July of 1997, and the case was certified as a class action in October of that year. It was subsequently consolidated with another class action, Jones v. District of Columbia, in May of 1998. In June of 1998, the district court granted summary judgment in plaintiffs’ favor in both consolidated actions, a ruling that the District never challenged. Although that summary judgment terminated the liability issues in plaintiffs’ favor, the litigation continued through years of negotiation of the remedy phase, which finally produced a consent decree in 2006. While the parties were able to reach consent with respect to the remedy, the question of attorneys’ fees remained in dispute.
The District did not contest the claim of plaintiffs’ counsel that attorneys’ fees were in order under the IDEA, but vigorously disputed the amount of the award. The continuing fee dispute involved two separate fee petitions. The first petition sought attorneys’ fees for the nine-year period from the start of the lawsuit through July 26, 2006. The parties agreed that an uncapped computation of the awardable fees for this period would amount to $1,820,000. The District, however, contended that the $4000 statutory fee cap applied. The plaintiffs contended, and the district court held, that the fee cap did not limit fees payable by the District to $4,000 for the entire class action. That is, the statute by its terms applied to the “fees of an attorney who represents a party in an action.... ” 2006 District of Columbia Appropriations Act § 122(a)(1) (emphasis added). Therefore, the district court ruled that the statute did not govern the fees of attorneys representing multiple members of a class rather than a single party and that plaintiffs’ counsel would be entitled to reasonable attorneys’ fees “so long as the District’s payment of such fees does not exceed $4000 per plaintiff class member.” Petties v. District of Columbia, 538 F.Supp.2d 88, 96-97 (D.D.C.2008) (“2008 Fee Cap Decision ”). The District did not appeal the fee award.
The second of the two fee petitions gives rise to the present appeal. In March of 2009, plaintiffs’ class counsel petitioned for attorneys’ fees of $1,938,239.70 for monitoring and compliance work from July 26, 2006, when the consent decree was presented to the court, through December 31, 2008. During the ensuing dispute over the amount of the fee and an exchange of legal arguments, including a surreply by the District, the District did not raise any argument regarding the fee cap. Nor did it raise the issue in a hearing on the fee petition on September 16, 2009. Finally, *1091 the District raised the fee cap issue in a supplemental opposition to plaintiffs’ request for fees on October 27, 2009, arguing that the $4000 limitation applied to the class action.
On January 4, 2010, the district court entered an order awarding counsel fees in the amount of $1,454,032.22. Blackman v. D.C., 677 F.Supp.2d 169, 180 (D.D.C.2010) (“2010 Fee Award Decision”). The District filed the present appeal from that order.
Analysis
The District’s appeal is based entirely on its construction of the fee cap statute, which it contends caps the awardable fees in this class action at $4000. Plaintiff-appellees respond that the cap is inapplicable to class actions but governs only the fees of an attorney representing a single party in an action against the District. Before reaching the question of statutory interpretation, we first consider briefly two other issues raised by appellees which they contend preclude the adjudication of the District’s argument.
First, appellees contend that the District’s argument is barred by the law of the case. Appellees contend that the district court’s adoption of their interpretation of the fee cap statute as not applying to class actions in the 2008 Fee Cap Decision, which was not appealed by the District, decides the question. We note that the 2010 order under review did not use the phrase “law of the case,” but did seem to invoke it by stating, “the Court has already considered this argument and rejected it.” 2010 Fee Award Decision, 677 F.Supp.2d at 180. Arguably then, the principle of consistency underlying the law of the case doctrine could be held to preclude the District’s argument in the present case. See, e.g., Arizona v. California, 460 U.S. 605, 619, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (“[A] fundamental precept of common law adjudication is that an issue once determined by a competent court is conclusive.”). However, the district court did not simply rely on its prior ruling as establishing controlling law of the case, but rather reiterated its prior reasoning in explaining that “[defendants have given the Court no reason to change its earlier ruling, and it will not do so.” 677 F.Supp.2d at 180. Upon de novo review, we reach a similar conclusion on the appropriate construction of the fee cap statute.
Secondly, appellees implicitly argue in their briefing of the law-of-the-case theory that the District did not properly preserve this fee cap issue in the district court and that we should therefore treat the argument as abandoned or forfeited. We are reluctant to treat as forfeited a substantive assertion of error when the appellees themselves have only obliquely asserted such waiver or forfeiture in their presentation of another argument. Therefore, again we will bypass the suggested preclusion of the issue and consider it on the merits.
Our analysis begins with the language of the statute. As the district court stated:
The plain and unambiguous language of the fee cap statute specifically precludes the District from paying fees in excess of $4000 to “an attorney who represents a party in an action” under the IDEA. See Pub.L. No. 109-115, 119 Stat. 2396, 2519(2005).
2010 Fee Award Decision, 677 F.Supp.2d 169, 180 (quoting 2008 Fee Cap Decision, 538 F.Supp.2d at 96). We agree with this obvious proposition.
We further agree with the district court that class counsel in the consolidated class actions before the court “is not ‘an attorney who represents a party in an action’— class counsel in Petties and class counsel in Blackman/Jones represent hundreds *1092 and/or thousands of parties.” Id. Therefore, on the face of the statute, the district court concluded that
the cap does not preclude the Court from ordering defendants to pay and— more importantly — does not preclude the defendants from paying reasonable attorneys’ fees to the plaintiff classes, so long as the total amount paid by the defendants does not surpass the statutory fee cap multiplied by the total number of members of the plaintiff class.

Id.

As it is undisputed that the classes number in the hundreds, if not thousands, the plain and unambiguous language of the statute would seem to make the district court’s conclusion unassailable and compel us to affirm the fee award order.
The District, however, contends that we should not stop with the plain and unambiguous language of the statute. The District bases its argument principally on the Dictionary Act, 1 U.S.G. § 1, which states, in relevant part, that “[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise — words importing the singular include and apply to several persons, parties, or things.” Thus, the District argues, the words “an attorney” in the fee cap legislation should include “attorneys” and the words “representing a party” should also include attorneys representing “parties.” Under that construction, the District contends, the fee cap would apply to the attorneys representing the parties in class actions and should cap the payable fees at $4000. We do not accept this interpretation of the fee cap legislation.
By its terms, the Dictionary Act does not apply to pluralize all nouns in all statutes. It is inapplicable if “the context indicates otherwise.” The Supreme Court long ago told us that the pluralization rule established in the Dictionary Act “is not one to be applied except where it is necessary to carry out the evident intent of the statute.” First Nat'l Bank in St. Louis v. Missouri, 263 U.S. 640, 657, 44 S.Ct. 213, 68 L.Ed. 486 (1924). In the context of the fee cap legislation, even the District concedes that the words “an action” cannot logically be construed to refer to “actions.” Such a construction, taken in conjunction with the District’s pluralization of the other nouns, would compel the result that an attorney who represented many different parents of disabled children in many different actions could never be compensated past the first $4000. Similarly, if we pluralized “attorney” and “party” but not “action,” we would create an anomalous situation. A class action with multiple named class members, each having his or her own attorney, could result in a fee capped at $4000 multiplied by the number of named plaintiffs with separate counsel. But a class action with one or more individual named class members represented by a single attorney would be capped at $4000. Additionally, this construction would provide a perverse incentive for breaking single class actions into inefficient multiple actions to generate larger counsel fees in direct contradiction of Congress’s apparent goal at reducing costs.
To return to the admonition of First National Bank, the “evident intent” of the statute is to address individual IDEA proceedings, not class actions. We therefore agree with the district court’s conclusion that the plain and unambiguous language of the statute controls, and the fee cap is not applicable in this case.
Accordingly, the order of the district court is

Affirmed.

. The full text of the statute reads:
Sec. 122. (a) None of the funds contained in this Act may be made available to pay— (1) the fees of an attorney who represents a party in an action or an attorney who defends an action brought against the District of Columbia Public Schools under the Individuals with Disabilities Act (20 U.S.C. § 1400 et seq.) in excess of $4,000 for that action; or
*1090 (2) the fees of an attorney or firm whom the Chief Financial Officer of the District of Columbia determines to have a pecuniary interest, either through an attorney, officer, or employee of the firm, in any special education diagnostic service, schools, or other special education service providers.
(b) In this section, the term “action” includes an administrative proceeding and any ensuing or related proceedings before a court of competent jurisdiction.