# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 4, 2016                    Decided May 3, 2016

No. 15-7003

KATHY RADTKE AND CARMEN CUNNINGHAM,
APPELLANTS

v.

MARIA CASCHETTA, ET AL.,
APPELLEES

Consolidated with 15-7008

Appeals from the United States District Court
for the District of Columbia
(No. 1:06-cv-02031)

*S. Micah Salb* argued the cause for appellants/cross-appellees. With him on the briefs was *Dennis Chong*.

*Richard Talbort Seymour* argued the cause for *amici curiae* Metropolitan Washington Employment Lawyers Association, et al. With him on the brief was *Keira McNett.*

*Susan L. Kruger* argued the cause for appellees/cross-appellants. With her on the briefs was *Alan Lescht*.

Before: GARLAND,[*] *Chief Judge*, and BROWN and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:  After eight years of litigation, appellants Kathy Radtke and Carmen Cunningham received less than $6,000 in damages for unpaid overtime wages.  They spent the next two years seeking $250,000 in attorney's fees; the district court ultimately awarded them just over $56,000.  But this decade-long litigation will not end here.  Appellants now challenge the fee award as too low while the employers challenge it as too high, each alleging a multitude of errors.  We need discuss only two of these claims, however, as we conclude the lower court's clear factual error requires us to vacate the judgment and remand for reassessment of reasonable attorney's fees.

**I**

This court laid out the full background of this dispute in an earlier merits appeal, *see Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159 (D.C. Cir. 2015), but for our current purposes the following facts suffice.  In 2006, Radtke and Cunningham brought suit against Advanta Medical Solutions and Lifecare Management Partners ("Employers") for failure to pay overtime in violation of the Fair Labor Standards Act and Maryland state law.  After years of back-and-forth, the case proceeded to jury trial.  Appellants prevailed but received only $5,844.29 in damages out of a claim for over $87,000—largely because the jury and court rejected their claims for doubled and trebled damages.

---

[*] Chief Judge Garland was a member of the panel at the time the case was argued but did not participate in this opinion.

Because appellants successfully recovered unpaid wages, the Fair Labor Standards Act entitled them to reasonable attorney's fees. *See* 29 U.S.C. § 216(b) ("The court . . . shall . . . allow a reasonable attorney's fee to be paid by the defendant" to a prevailing plaintiff.). Appellants accordingly petitioned for $255,898.80 in fees.[1] The district court accepted this figure as the appropriate "lodestar"—*i.e.*, the "most useful starting point for determining the amount of a reasonable fee," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While a "strong presumption" of reasonability attaches to the lodestar, *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010), the court nevertheless reduced this amount by 75% in calculating the final fee award.

Most relevant for our purposes, the court explained it was "plaintiffs' counsel [sic] inability to provide a meaningful demand for the actual damages suffered" that was "driving" the substantial reduction. J.A. 40. According to the court, "[i]t was not until the eve of trial, and several years into the litigation, that counsel provided th[e] Court with any calculation of plaintiff's damages." J.A. 41. This failure to provide a damage demand, according to the court, caused unnecessary delay and the resulting inflation of attorney's fees. *See* J.A. 41-42. It therefore concluded a fee of only $56,474.70 was appropriate and reasonable.

Both plaintiffs and defendants appealed. Plaintiff-appellants argue the lower court erred, for a variety of reasons, in adjusting the lodestar downward. The Employers, on the other hand, contend the fee petition should have been

---

[1] Appellants estimated their true expenditures at over $325,000 but voluntarily reduced that amount by one-quarter to account for the inevitable existence of duplicative or overly time-consuming tasks.

denied entirely as untimely or, if not denied, then at least reduced more substantially. As noted previously, we have no need to reach most of these arguments because we conclude the lower court's clear error with regard to the facts "driving" the fee reduction is sufficient to require remand.

## II

As an initial matter, the Employers claim appellants' fee petition must be denied in its entirety because it was untimely. Federal Rule of Civil Procedure 54 requires a petition for attorney's fees "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Appellants admittedly filed their petition *15* days after the lower court's initial entry of judgment. The Employers thus moved to strike the fee petition, and appellants responded by filing a motion for leave to file the petition *nunc pro tunc*. The lower court denied the former and dismissed the latter as moot. The Employers moved for reconsideration, but the court again denied the motion, albeit based on different reasoning. The Employers moved yet again for reconsideration. This time, though, the court dismissed the motion as moot without explanation after awarding appellants their attorney's fees.

We need not concern ourselves with the lower court's two earlier justifications for denying the employers' motions—nor do we need to address the parties' other arguments regarding whether the appellants' late filing was excusable—as the court reached the correct result when it dismissed the motion as moot.[2] While Federal Rule of Civil

---

[2] The outcome—not the reasoning—is relevant here because we are free to affirm the lower court on alternative grounds. *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1045 n.2 (D.C. Cir. 2012). That the district court gave no reason for dismissing the Employers' motion is therefore irrelevant.

Procedure 54 requires a fee petition to be filed "no later than" 14 days after judgment is entered, the Advisory Committee's Notes provide: "A new period for filing will automatically begin if a new judgment is entered following . . . the granting of a motion under Rule 59." FED. R. CIV. P. 54 advisory committee's note (1993). The Supreme Court instructs that guidance from the Advisory Committee is entitled to "weight," *see Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (quoting *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 444 (1946)), and nothing in the text of the Rule or our precedent suggests the Committee's interpretation is incorrect.

Our sister circuits have agreed with the Advisory Committee's construction of the Rule, holding that a fee petition "is timely if filed no later than 14 days after the resolution of a Rule 50(b), Rule 52(b), or Rule 59 motion." *Bailey v. Cnty. of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005); *see also Miltimore Sales, Inc. v. Int'l Rectifier, Inc.,* 412 F.3d 685, 689 (6th Cir. 2005); *Quigley v. Rosenthal*, 427 F.3d 1232, 1237 (10th Cir. 2005); *Members First Fed. Credit Union v. Members First Credit Union of Fl.*, 244 F.3d 806, 807 (11th Cir. 2001); *Weyant v. Okst*, 198 F.3d 311, 315 (2d Cir. 1999). That is exactly the situation here—after partially granting a motion under Rule 59, the lower court entered an amended judgment on May 15, 2014, well after appellants filed their fee petition. Once the court entered the amended judgment, the Employers' earlier-filed motion to strike became moot because the new judgment created "[a] new period for filing" a fee petition. FED. R. CIV. P. 54 advisory committee's note.

The Employers argue, however, that appellants failed to take advantage of this new filing period because they never renewed their fee petition—meaning they failed to file within

14 days of the May 15, 2014 amended judgment. But the text of Rule 54 never says when the filing period begins, only when it ends. The plain language of the rule requires a petition be filed "no later than" 14 days after judgment is entered, *not* "within" 14 days of a new judgment. A pre-judgment petition like appellants' therefore satisfies this "no later than" requirement.

The Employers suggest the rule both opens and closes the filing window. In *Weyant*, the Second Circuit noted that the 14-day filing window "began with" entry of the district court's order denying all post-judgment motions. 198 F.3d at 315. But the *Weyant* court was evaluating the filing of a fee petition seeking compensation for services rendered in opposing post-judgment motions—a petition that was filed *after* the court resolved (and denied) both motions. Because no *pre*-judgment petition was at issue there, the language Employers cite in support of their position is merely dicta. *See United States v. Wade*, 152 F.3d 969, 973 (D.C. Cir. 1998) (explaining that even if an earlier opinion could be read to reach the relevant issue, because "that issue was not before the court, its overly broad language would be *obiter dicta* and not entitled to deference"). Moreover, although *Weyant* "is deserving of respect as a decision of a sister circuit," it is "not binding authority on us." *See Indep. Petrol. Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1257-58 (D.C. Cir. 1996).

The Advisory Committee's explanation for Rule 54(d)(2)(B)'s 14-day deadline further reinforces our conclusion that a pre-judgment petition satisfies the Rule. The deadline ensures "the opposing party is informed of the claim before the time for appeal has elapsed." FED. R. CIV. P. 54 advisory committee's notes. That purpose is served just as well by a pre-judgment petition. The Employers here were certainly on notice that appellants were seeking attorney's

fees. Relatedly, the deadline "enables the court . . . to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case." *Id.* Again, that purpose is served just as well, if not better, by a pre-judgment petition. Finally, "[p]rompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while services performed are freshly in mind." *Id.* The earlier a petition is filed, the more likely that is to be the case; in fact, the Employers' preferred interpretation requiring filing *after* the court has ruled on post-judgment motions (perhaps months after trial) undercuts that purpose.

In sum, while appellants' fee petition originally was untimely, the court's entry of an amended judgment created "[a] new period for filing" and cured that untimeliness, notwithstanding the fact that the petition was filed before entry of the new judgment. Appellants thus satisfied Rule 54(d)(2)(B)'s dictates, leaving no ground on which to deny appellants' fee petition in its entirety for lack of timeliness.

## III

Having determined that appellants are entitled to fees, we now consider the parties' arguments regarding the amount. Appellants primarily contest the district court's decision to adjust the lodestar downward because, according to the court, appellants achieved only "limited success." We do not reach that claim, however, because another error—the district court's incorrect finding that appellants did not provide a damages estimate until the eve of trial—requires remand.

We review a fee award "for abuse of discretion and will reverse the district court if its decision rests on clearly erroneous factual findings." *Ass'n of Am. Physicians &*

*Surgeons, Inc. v. Clinton*, 187 F.3d 655, 660 (D.C. Cir. 1999) (per curiam).  The error here is quite clear.  Though the lower court listed a variety of reasons justifying the fee reduction, what was really "driving" its decision—and what most concerns us here—was the appellants' alleged "inability to provide a meaningful demand for actual damages suffered . . . until the eve of trial."  J.A. 40-41.

In fact, appellants were not negligent or dilatory in providing a damages estimate; they did so time and again, including before they filed suit.  *See* J.A. 108 (pre-suit November 2006 letter estimating damages at $22,700); J.A. 282 (December 2007 Rule 26(a)(1) disclosures, calculating damages at just under $22,680); J.A. 319-21 (May 2008 expert reports calculating damages at somewhere between approximately $13,000 and $20,000); J.A. 290-91, 306 (February 2009 response to interrogatories, itemizing compensatory damages and calculating them at approximately $17,500).  They even offered an early settlement, but the Employers never responded.  *See* J.A. 117 (December 1, 2006 offer to settle for $30,000, inclusive of liquidated damages and attorney's fees); J.A. 118-19 (December 28, 2006 offer to settle for $25,000, inclusive of liquidated damages and attorney's fees).

Although the district court was unaware of it, appellants prepared and delivered the early damages calculation required by Federal Rule of Civil Procedure 26(a)(1).  The court lauded the important role Rule 26 plays by mandating early disclosure of damages, thereby enabling the opposing party to decide whether to settle before expending immense resources.  *See* J.A. 41.  Yet the court never inquired whether the appellants had provided a Rule 26(a)(1) disclosure and therefore failed to discover that they had done so as early as December 2007, six years before trial.  *See* J.A. 282.  At a

minimum, the court should have known appellants furnished damages calculations to the Employers far in advance of trial because appellants attached to their fee petition several 2006 settlement letters, which contained estimates of their damages. *See* ECF No. 167, Ex. 5, 6, 7. The court's erroneous factual finding, which was based in part on the court's failure to ascertain whether appellants had provided damages estimates to the defendants, requires remand.

The Employers' response seems to be that appellants' estimates were for "wildly varying amounts," Oral Arg. Recording 39:26-39, and did not accurately predict the ultimate verdict of less than $6,000. These arguments fail at the outset because they misconstrue what the district court found, and we, as an appellate court, cannot reimagine the lower court's factual findings. *See, e.g.*, *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713-14 (1986) (holding the court of appeals was mistaken to engage in factfinding rather than simply reviewing the district court's factual findings for clear error). The district court's complaints here were about the (non)*existence* of the appellants' damages calculations, not their consistency or accuracy. The court claimed it "struggled mightily" with appellants before any damages estimate was provided, pointing to the absence of any damages calculations in their complaint or amended complaint. J.A. 40-41. It also found appellants "first purported to provide a damages calculation in their Trial Brief" (filed December 5, 2013), and even then "failed to actually file the attachment with the damages calculation." J.A. 41. The court concluded it had first received damages calculations on December 18, 2013—"the eve of trial." *Id.*

But as described previously, this finding was blatantly inaccurate.[3]

Even assuming the district court had the Employers' arguments in mind when making its findings, those claims still fail. The first contention is a mischaracterization of the facts; the compensatory damages estimates ranged from a low of approximately $13,000 to a high of just under $23,000. Any variance beyond that was due to escalating attorney's fees accrued by virtue of the protracted litigation.

As to the second contention, there is no indication appellants' demands were unreasonable, frivolous, or otherwise entirely disconnected from reality. That the jury ultimately awarded less than requested—especially in a case where most of the requested damages were calculated by multiplying compensatory damages—is not an indictment of appellants' actions. In any event, appellants offered to settle for $25,000 to $30,000 very early in the dispute, yet the Employers never responded, much less counter-offered. *See* J.A. 117-19. The Employers, moreover, could have protected themselves from significant attorney's fees by making a Rule 68 offer of judgment. *See* FED. R. CIV. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). But they failed to do so. They cannot now complain appellants acted unreasonably, allegedly leaving the Employers no way to protect themselves from ever-escalating fees.

---

[3] To the extent the court's complaint was that appellants had not provided *the court* with any damages calculations (even though they had provided multiple such calculations to the Employers, as described above), that fact is irrelevant to the court's purported reason for insisting on a prompt calculation—allowing *the parties* to decide whether to settle or continue litigating.

In the end, there is no support in the record for the district court's finding that appellants failed to promptly provide a damages calculation that could have facilitated early settlement. This clear factual error requires remand. Additionally, because we cannot ascertain whether or how significantly this mistaken factual finding impacted other aspects of the district court's fee reasonability assessment, we must vacate the entire decision. None of the lower court's previous determinations will be law of the case as a consequence. On remand, the parties are free to reargue and the court is free to reconsider any of the issues that we have not reached.

## IV

For the foregoing reasons, the judgment of the district court is vacated, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*