# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 13, 2016          Decided December 9, 2016

No. 15-7119

ASHIMA REED, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Consolidated with 16-7009

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:14-cv-01887)

———

*Douglas Tyrka* argued the cause and filed the briefs for appellants.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: TATEL, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

2

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Concurring opinion filed by *Circuit Judge* TATEL.

EDWARDS, *Senior Circuit Judge*: The purpose of the Individuals with Disabilities Education Act ("IDEA") is "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). The statute contains a fee-shifting provision that permits parents and legal guardians to recover reasonable attorneys' fees and costs if they prevail in certain, statutorily prescribed proceedings. *See* 20 U.S.C. § 1415(i)(3)(B). In calculating a fee award, courts take into account both the "number of hours reasonably expended in litigation" and the "reasonable hourly rate" for the services provided, which is determined in part by reference to the prevailing market rate for attorneys' services. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (quoting *Save Our Cumberland Mountains, Inc. v. Hodel (SOCM)*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (en banc)).

Appellants, parents and legal guardians of children with disabilities who prevailed in IDEA proceedings, filed suit in the District Court seeking reasonable attorneys' fees and costs related to these proceedings. Appellants also sought an award of "fees-on-fees" for work done in connection with their pursuit of fees for the IDEA proceedings. The District Court granted both requests, but did not award Appellants the full amounts requested.

Appellants contend that the District Court erred in excluding certain hours spent at "settlement conferences" from their fee award. Appellants also assert that the District Court abused its discretion in refusing to find that the

"prevailing market rate" for attorneys' fees in IDEA cases is aligned with the *Laffey* Matrix, a fee matrix originally compiled to reflect the prevailing market rate for "complex federal litigation." *See Laffey v. Nw. Airlines, Inc. (Laffey I)*, 572 F. Supp. 354, 372 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, *Laffey v. Nw. Airlines, Inc. (Laffey II)*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds*, *SOCM*, 857 F.2d 1516.

We agree with Appellants that the District Court should not have excluded certain hours billed as "settlement conferences" from its initial fee award calculation. However, we hold that the District Court did not abuse its discretion in finding that Appellants had failed to demonstrate that their IDEA matters fall within the category of "complex federal litigation" to which the *Laffey* Matrix applies. Therefore, the District Court was not obliged to follow the *Laffey* Matrix in calculating attorneys' fees due Appellants. Appellants also forfeited two claims raised for the first time on appeal: (1) that the affidavits they submitted in this case independently demonstrate a prevailing IDEA market rate that aligns with the *Laffey* Matrix; and (2) that the rates awarded by the District Court are insufficient to attract competent counsel and, thus, are too low. These claims were not clearly raised with the District Court, so we decline to address them on appeal. Finally, Appellants did not submit any evidence demonstrating that they should receive a different market rate for fees-on-fees and, therefore, the District Court did not abuse its discretion in applying the same rate when calculating both the initial fee award and subsequent fees-on-fees award.

## I.   BACKGROUND

### A.   *The Individuals with Disabilities Education Act*

As noted above, the purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). IDEA provides a variety of mechanisms for students to receive the assistance they require. This assistance includes an "impartial due process hearing…conducted by the State educational agency or by the local educational agency" after a party has filed a complaint, 20 U.S.C. § 1415(f)(1)(A), pertaining to "any matter relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child," § 1415(b)(6)(A). Parents or legal guardians who prevail in such proceedings are permitted to bring suit in district court to request the award of "reasonable attorneys' fees" and related costs. 20 U.S.C. § 1415(i)(3)(B)(i).

Though fee applicants "bear[] the burden of establishing entitlement to an award," IDEA provides relatively little guidance to either the courts or litigants regarding how, precisely, these "reasonable attorneys' fees" are to be calculated. *Eley*, 793 F.3d at 100 (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). The statute notes only that fee awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," 20 U.S.C. § 1415(i)(3)(C), and permits courts to reduce awards of attorneys' fees if they "unreasonably exceed[] the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill,

reputation, and experience." 20 U.S.C. § 1415(i)(3)(F)(ii). Nonetheless, in interpreting the dictates of IDEA's fee-shifting provision, this court has typically relied on a two-part framework that takes into account: (1) the "number of hours reasonably expended in litigation"; and (2) the "reasonable hourly rate" for the services provided. *See Eley*, 793 F.3d at 100 (quoting *SOCM*, 857 F.2d at 1517). Both parts of this test are at issue in this case.

To establish an entitlement to a particular fee award, fee applicants must document the hours spent litigating in IDEA proceedings in which they prevailed. *See id.* (quoting *Covington*, 57 F.3d at 1107). IDEA, however, imposes a number of limitations on the hours for which prevailing parties can seek recompense. *See* 20 U.S.C. § 1415(i)(3)(D)(i) –(iii). Of particular salience in this case, fee applicants are traditionally barred from recovering fees associated with hours spent in "resolution sessions." 20 U.S.C. § 1415(f)(1)(B); § 1415(i)(3)(D)(ii)–(iii); *see D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 2 (D.D.C. 2007).

In addition to providing an accounting of the hours spent on a particular IDEA claim, fee applicants must establish the reasonable hourly rate at which these hours should be reimbursed in order to prevail on a request for a fee award. *Eley*, 793 F.3d at 100. "Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community." *Id.* (quoting *Covington*, 57 F.3d at 1107). We have noted that determining the third of these sub-elements, the prevailing market rate, is "inherently difficult." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Fee applicants in IDEA cases have relied on two separate, but

inter-related, approaches to providing evidence of prevailing market rate. We explain below.

*First*, litigants have claimed that IDEA litigation should be accorded the same rates laid out in the aforecited "*Laffey* Matrix." Two variants of the *Laffey* Matrix, intended to update the original matrix to reflect current market rates, are potentially implicated by such requests: (1) the USAO *Laffey* Matrix, which is maintained by the United States Attorney's Office for the District of Columbia and adjusts the rates set forth in the original *Laffey* Matrix to "account for inflation by using the Consumer Price Index for All Urban Consumers of the United States Bureau of Labor Statistics"; and (2) the Legal Services Index (LSI) *Laffey* Matrix, which "uses the Legal Services Index of the Bureau of Labor Statistics to adjust for inflation." *See Eley*, 793 F.3d at 101. Because the *Laffey* Matrix and subsequent revisions to this matrix apply only to "complex federal litigation," fee applicants have focused their efforts on attempting to demonstrate that IDEA cases fall within the bounds of this type of litigation. *See id.* at 105; *Laffey*, 572 F. Supp. at 371–72.

*Second*, fee applicants have tried to establish the prevailing market rate by providing evidence of the fees charged, and received, by IDEA litigators. While practitioners appear to frequently state that their rates are identical to some version of the *Laffey* Matrix, this means of establishing the "prevailing market rate" is not conceptually linked to the *Laffey* Matrix. *See Price v. District of Columbia*, 792 F.3d 112, 117 (D.C. Cir. 2015) (Brown, J., concurring) (noting that absent a finding that representation in "IDEA administrative due process hearings" commands the same rates as complex federal litigation, "*Laffey* Matrix rates are irrelevant to the prevailing-rate determination").

**B.** *The Proceeding Below*

Appellants in this case are the parents and legal guardians of six students who prevailed in separate due process hearings. On November 10, 2014, they filed suit in the District Court requesting the award of "reasonable fees and costs" associated with their IDEA claims. The District Court referred the case to a Magistrate Judge for full case management. Appellants then submitted a Motion for Summary Judgment, attaching a summary of the hours expended litigating these cases and materials intended to demonstrate that the prevailing market rate for IDEA cases was consistent with the rates set forth in the LSI *Laffey* Matrix. In response, the District of Columbia filed a Cross-Motion for Summary Judgment.

The Magistrate Judge issued a Report and Recommendation which found, in relevant part, that certain hours spent by Appellants' counsel traveling to and participating in "settlement conference[s]" should be excluded from Appellants' fee award because such meetings are not recompensable under the IDEA. Judicial Appendix ("JA") 369, 370, 371, 373, 374. The Magistrate Judge also rejected Appellants' requests for the application of a prevailing market rate equal to "enhanced *Laffey* Matrix or *Laffey* Matrix rates," JA 379, and proposed that all but one Appellant be awarded "three-quarters of the [USAO] *Laffey* rates," JA 384; *see* JA 376–84.

Appellants objected to the Magistrate's Report on two grounds. *First*, Appellants argued that IDEA cases constitute "complex litigation." Therefore, according to Appellants, the Magistrate Judge erred in declining to apply the rates laid out in the *Laffey* Matrix in calculating the fees due in this case. In support of this claim, Appellants

submitted six affidavits from lawyers averring that IDEA litigation in which they had been involved was no less complex than other cases in which the courts have applied the *Laffey* Matrix in calculating attorneys' fees. *Second*, Appellants argued that, in calculating the fees due, the Magistrate Judge erred in removing hours spent by counsel in "settlement conferences."

On September 28, 2015, the District Court granted in part and denied in part both Appellants' and Appellee's Motions for Summary Judgment, awarding Appellants $89,158.60 in attorneys' fees and costs. The District Court held that it would "adopt the Magistrate Judge's recommendation to exclude hours billed for 'settlement conferences'" from the fee award. *Reed v. District of Columbia*, 134 F. Supp. 3d 122, 134 (D.D.C. 2015). The court noted that Appellants bore the burden of establishing that these conferences were not statutorily non-reimbursable "resolution sessions" and claimed that, because Appellants had failed to point to anything specific in the record to demonstrate that these meetings were not in fact resolution sessions, they had fallen short of this requirement. *Id.*

The District Court also rejected Appellants' request that the "enhanced *Laffey* matrix" be used to determine the reasonable hourly rate for their counsel's efforts during the underlying administrative proceedings. The court stated that while fee matrices have been recognized as a "'useful starting point in calculating the prevailing market rate' for attorneys' services," Appellants had not provided sufficient evidence to demonstrate that they should be awarded rates in line with this matrix. *Id.* at 127 (quoting *Eley*, 793 F.3d at 100); *see also id.* at 129–30. Specifically, the District Court held that Appellants had failed to demonstrate that IDEA matters constituted "complex federal litigation," the category of cases

to which the *Laffey* Matrix presumptively applies. After disposing of Appellants' evidence in support of the use of full *Laffey* rates in this case, the District Court cited the "vast number of district court cases" in this circuit that had found that "75% of *Laffey* rates approximates the prevailing market rate for IDEA administrative proceedings" and applied this hourly rate to calculate Appellants' fee award. *Id.* at 131; *see* 131–32.

Shortly after the District Court issued its original fee award, Appellants filed a request for fees-on-fees, fees associated with attempting to secure the attorneys' fees and costs incurred in the underlying IDEA due process hearings. *See* JA 494. Appellants argued that the LSI *Laffey* Matrix reflected the prevailing market rate for this type of work. JA 499. In support of this claim, they provided affidavits stating that "only two law firms," including Appellants' lawyer's firm, accepted cases in the "specialized field of IDEA fees litigation" and claiming that Appellants' "attorneys customarily charge" and receive payment from clients in line with this rate. *Id.* The District Court, however, held that it would abide by its earlier determination that the appropriate prevailing market rate in this case was 75% of the USAO *Laffey* rate, declining to "enter the labyrinth" of determining the appropriate rate anew. Memorandum Opinion and Order at 2, JA 534. It then granted Appellants' motion in part, awarding them $19,048.30 of the requested $62,862.65. *Id.* at 1, JA 533.

## II. ANALYSIS

### A. *Standard of Review*

This court reviews fee awards for abuse of discretion and will not upset a district court's hourly rate determinations "absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence." *Eley*, 793 F.3d at 103 (quoting *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)). "This limited standard of review is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 104 (quoting *Covington*, 57 F.3d at 1110). Nonetheless, this court will examine *de novo* the question of whether the "district court applied the correct legal standard." *Id.* (quoting *Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012)).

### B. Resolution Sessions

Appellants are correct that the District Court abused its discretion in excluding certain hours classified as "settlement conferences" in their billing records from their fee award. IDEA makes clear that hours spent in "resolution sessions" are nonreimbursable and, thus, should not be included in a prevailing party's fee award. *See* 20 U.S.C. § 1415(f)(1)(B); § 1415(i)(3)(D)(ii)–(iii); *D.D. ex rel. Davis*, 470 F. Supp. 2d at 2. However, the statute delineates a number of requirements for a meeting to constitute a "resolution session": it must be attended by the parents who have submitted a complaint, "the relevant member or members of the [Individualized Education Program ("IEP")] Team who have specific knowledge of the facts identified in the complaint," and a "representative of the

[local educational] agency who has decisionmaking authority on behalf of such agency." 20 U.S.C. § 1415(f)(1)(B)(i).

Appellants claim that the "settlement conferences" at issue here were, as the District Court reported, "sham resolution sessions," which fell short of the standards prescribed by IDEA. *Reed*, 134 F. Supp. 3d at 134; Br. for Appellants at 20–22. This is uncontested. Therefore, Appellants contend that the hours spent in these settlement conferences are reimbursable pursuant to IDEA's fee-shifting provision and should not have been excluded from their fee award. Br. for Appellants at 20–22. The District Court dismissed this argument, noting that Appellants bore the burden of proving "their entitlement to compensation" and stating that Appellants' evidence, which the court characterized as providing only general statements that the District of Columbia often "invites parties to meetings it calls resolution sessions 'but fails to staff and conduct such meetings in accordance with the IDEA,'" was insufficient. *Reed*, 134 F. Supp. 3d at 134 (quoting Verified Statement of Nicholas Ostrem, Counsel for Plaintiffs, JA 410).

Yet, in rendering this decision, the District Court appears to have overlooked, or failed to appropriately weigh, evidence submitted by Appellants that stated not only that the District of Columbia had, in the past, failed to satisfy all of IDEA's requirements when inviting parties to "resolution sessions," but that the specific settlement conferences excluded by the District Court in this case were themselves deficient. *See* Verified Statement of Nicholas Ostrem, Counsel for Plaintiffs, JA 411. Counsel for Appellants in the underlying administrative hearings provided an affidavit noting that students' IEP teams were not present at these meetings and representatives of the local educational agency did not indicate they possessed "decisionmaking authority" with

respect to the students' complaints and appeared to lack "specific knowledge of the facts" put forth in these complaints. *Id.*

The District Court thus abused its discretion in dismissing out of hand Appellants' claims that the disputed hours were not resolution sessions. *Cf. Radtke v. Caschetta*, 822 F.3d 571, 575 (D.C. Cir. 2016) (holding that a district court abused its discretion in reducing a fee award due to appellants' alleged inability to provide a meaningful demand for actual damages suffered when appellants had in fact provided damages estimates to the court). Indeed, the kind of specific, undisputed record evidence that a meeting fell short of the statutory requirements for a "resolution session" presented by Appellants in this case has, in the past, been deemed sufficient to establish that a plaintiff should not have these hours removed from their fee award. *See Eley v. District of Columbia*, 999 F. Supp. 2d 137, 165–66 (D.D.C. 2013), *vacated and remanded on other grounds*, 793 F.3d 97 (D.C. Cir. 2015). We therefore reverse the decision of the District Court and remand the case so that the court can calculate the amount due in fees for the settlement conferences.

**B.  *Appropriate Rate***

Over the course of this litigation, Appellants have requested a prevailing market rate for the attorneys' fees associated with their success in the underlying IDEA administrative hearings that is pegged to the LSI *Laffey* Matrix. In connection with this broad contention, Appellants have raised two arguments on appeal that were not clearly presented to or fully considered by the District Court: (1) The prevailing market rate for IDEA litigation aligns with rates contained in the LSI *Laffey* Matrix as evidenced by affidavits stating that IDEA attorneys charge their clients rates matching

this matrix. Br. for Appellants at 10. (2) The rates awarded by the District Court are insufficient to attract competent counsel to take on these kinds of cases and, as such, are impermissibly low. Br. for Appellants at 17–20. There are two problems with these claims. First, they were not fully explored with the District Court. Second, even after a generous read of the record, we can find no substantial or compelling evidence to support the points now pressed by Appellants. In these circumstances, it would imprudent for us to opine on these matters in the face of such a spare record. We do not mean to say that the positions lack merit. Rather, we simply mean to say that the issues should be left for another day when the claims can be appropriately fleshed out. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (noting "the general rule . . . that a federal appellate court does not consider an issue not passed upon below").

Appellants' principal argument on appeal, which was raised with the District Court, is that IDEA cases constitute "complex federal litigation" for purposes of the *Laffey* Matrix, and, as such, this fee matrix, or an updated version thereof, provides the relevant "prevailing market rate" that a court should look to when calculating Appellants' fee award. Br. for Appellants at 11–16. The District Court rejected this claim, and we affirm. We conclude that the District Court did not abuse its discretion in finding that Appellants failed to meet their burden of demonstrating that IDEA cases are akin to the type of cases traditionally understood to fall within the category of "complex federal litigation" to which the *Laffey* Matrix presumptively applies.

In *Eley v. District of Columbia*, this court bracketed the question of "whether IDEA litigation is in fact sufficiently 'complex' to use either version of the *Laffey* Matrix." 793 F.3d at 105. *But cf. Eley*, 793 F.3d at 105 (Kavanaugh, J.,

concurring) ("[I]n in my view, the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases.").

Following our decision in *Eley*, Appellants in this case proffered six affidavits from attorneys who are familiar with, or have litigated, IDEA cases. The affidavits claim that IDEA matters are akin to "complex federal litigation." JA 413–45. These affidavits include statements noting that practitioners have found "legal work under the IDEA to be far more complex than Title VII work and civil rights work [previously recognized examples of 'complex federal litigation']." JA 413. They also explain that IDEA cases are complex because they involve the application of "specialized non-legal knowledge regarding special education," JA 413, 424, 430, 434, 438, 442, and "limited discovery and pretrial exchange," which makes preparing for and litigating "IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses," JA 414, 424, 431, 434, 438, 442.

In our view, the District Court did not abuse its discretion in holding that, while Appellants may have demonstrated that IDEA proceedings are complicated "in some sense," they fell short of establishing that "such matters are complex federal litigation," *Reed*, 134 F. Supp. 3d at 129 (emphasis omitted), as this court has held they must. *See Eley*, 105 F.3d at 105 (finding that a district court abused its discretion in relying on the LSI *Laffey* Matrix to determine the prevailing market rate in IDEA litigation "absent…any record evidence, other than the fee applicant's declaration, demonstrating that IDEA litigation is as complex as the type of litigation that supports the 'enhanced' hourly rates in the LSI *Laffey* Matrix"). Mere conclusory statements that IDEA litigation is "as complex" as other types of cases deemed by this court to be "complex

federal litigation," absent an explanation of *why* this is so, cannot suffice to meet Appellants' burden.

We appreciate that attorneys who litigate IDEA cases may have "specialized non-legal knowledge." But this is true in a number of specialized fields. We also understand that IDEA litigants may not have discovery and pre-trial exchanges of the sort found in other federal litigation. But the absence of discovery may suggest that IDEA cases are not as complex as cases in which discovery is extensive. In other words, what Appellants have offered is insufficient to demonstrate that IDEA cases involve complex federal litigation.

To be clear, we do not mean to rule out the possibility that future fee applicants may be able to demonstrate that IDEA cases are "complex federal litigation" to which the *Laffey* Matrix presumptively applies. It will not be easy, however, as *Laffey* is not very helpful in explicating "complex federal litigation."

In *Laffey*, plaintiffs sought fees associated with litigating a case involving violations of Title VII and the Equal Pay Act. In order to assemble the information regarding attorneys' rates that now comprises the *Laffey* Matrix, the *Laffey* litigants assembled a "barrage of data, including twenty-five attorney affidavits secured specifically for [the] litigation, information gleaned from affidavits filed in other cases, and fee data reflected in previous judicial decisions." *Laffey v. Nw. Airlines, Inc. (Laffey I)*, 572 F. Supp. 354, 371–72 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, *Laffey v. Nw. Airlines, Inc. (Laffey II)*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds*, *SOCM*, 857 F.2d 1516. The *Laffey* plaintiffs offered this information specifically to demonstrate the prevailing market rates for what was called "complex federal litigation." *Id.* at 372. Very

little additional explanation is provided by the District Court in *Laffey* regarding the attributes of this type of litigation. The court simply noted that "the relevant legal market in this action is complex employment discrimination litigation and . . . this market is subject to the same hourly rates that prevail in other complex federal litigation." *Id.* at 374.

We have applied the *Laffey* Matrix to requests for attorneys' fees brought pursuant to 42 U.S.C. § 1988. *See, e.g.*, *Covington*, 57 F.3d at 1109. However, the decision in *Covington* is buttressed by the fact that the Senate Report accompanying the enactment of this statute describes section 1988 cases as involving "complex Federal litigation":

> It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, see *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D. Cal. 1974); *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444 (C.D. Cal. 1974); and *Swann v. Charlotte-Mecklenburg Board of Education*, 66 F.R.D. 483 (W.D.N.C. 1975).

*Blum*, 465 U.S. at 893–94 (quoting S. REP. NO. 94–1011, at 6 (1976)).

Unfortunately, the case law provides little guidance to litigants attempting to demonstrate that IDEA cases constitute "complex federal litigation." The main point here is that, regardless of whether future fee applicants can divine a

unifying thread that will bring IDEA cases under the umbrella of "complex federal litigation," it is clear that Appellants failed to do so in this case.

## C. *Fees-on-Fees*

IDEA litigants are entitled to receive compensation for the hours expended pursuing an initial fee award in District Court. *See Kaseman v. District of Columbia*, 444 F.3d 637, 642–43 (D.C. Cir. 2006). Appellants were awarded fees for this work. They complain that the rate used to calculate the fees was too low and that the District Court abused its discretion by "arbitrarily setting the rate without any examination of the record." Br. for Appellants at 23. Appellants, however, failed to provide any evidence suggesting that the "prevailing market rate" for fees-on-fees is distinct from the rate used to calculate attorneys' fees for the administrative proceedings.

This court has yet to determine whether all aspects of an IDEA litigation should be treated as a unified whole, subject to the same prevailing market rate. *But cf. Jester v. Gov't of District of Columbia,* 474 F.3d 820, 821–22 (D.C. Cir. 2007) (noting that an IDEA request for fee awards and fees-on-fees litigation should be considered part of the same action for the purposes of the IDEA's fee cap); *Kaseman*, 444 F.3d at 640–43 (same). We need not do so today, as the District Court did not abuse its discretion in applying the same rate for fees for the administrative proceedings and fees-on-fees in light of Appellants' failure to submit evidence of any meaningful difference between these two types of litigation.

## III.  CONCLUSION

For the reasons set forth above, we affirm the judgment of the District Court with respect to its determination of the prevailing market rate for both Appellants' initial request for fees and their fees-on-fees motion. We reverse and remand the District Court's judgment excluding certain hours spent in "settlement conferences" from Appellants' fee award.

TATEL, *Circuit Judge*, concurring: Attorneys seeking compensation under the Individuals with Disabilities Education Act are entitled to reasonable fees, 20 U.S.C. § 1415(i)(3)(B)(i), and bear the burden of demonstrating that the rates they seek are consistent with those "prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," *id.* § 1415(i)(3)(C). A reasonable fee is "one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citation, alterations, and internal quotation marks omitted).

In complex cases—such as antitrust, school desegregation, Title VII, and Fourth Amendment suits, *see id.* at 893–94—we and our district court colleagues have long accepted *Laffey* matrices as evidence of prevailing market rates. *See Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) ("In order to demonstrate [the prevailing market rate], plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office [*Laffey*] matrix . . . ."). Since the *Laffey* matrix was first used in a Title VII case in 1983, *see Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), courts in this circuit have awarded *Laffey* rates in a wide variety of complex litigation, including suits arising under the First Amendment, *see Covington*, 57 F.3d at 1103, the Americans with Disabilities Act, *see id.*, the Rehabilitation Act, *see Berke v. Federal Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013), the Freedom of Information Act, *see ACLU v. Department of Homeland Security*, 810 F.Supp.2d 267, 277 (D.D.C. 2011), and the Second Amendment, *see Heller v. District of Columbia*, 832 F. Supp. 2d 32, 48 (D.D.C. 2011).

Last year, in *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015), this court decided to treat IDEA cases differently. Instead of determining itself whether IDEA

litigation warrants *Laffey* rates, the court held not only that fee applicants must present evidence "demonstrating that IDEA litigation is as complex as the type[s] of litigation" that have garnered *Laffey* rates, *Eley*, 793 F.3d at 105, but also that it would review a district court's resolution of that issue for abuse of discretion, *id.* at 103–04.

It is true that fee applicants bear the burden of establishing the reasonableness of their rates and that district court fee awards are reviewed for abuse of discretion. *Copeland v. Marshall*, 641 F.2d 880, 901 (D.C. Cir. 1980) ("[A]n attorney's fee award by the District Court will be upset on appeal only if it represents an abuse of discretion."). But whether a particular rate in a particular case is reasonable is a fundamentally different question from whether IDEA litigation, as a type of legal work, is complex enough to merit *Laffey* rates. The former involves a fact-intensive, case-specific analysis of the prevailing lawyer's qualifications and experience. By contrast, the latter hinges not on the circumstances of any particular case, but rather on an assessment of the nature of IDEA litigation generally, as compared to, say, Title VII, Rehabilitation Act, or ADA litigation, each of which has commanded *Laffey* rates. Although this comparison requires consideration of how plaintiffs prove their cases, it is in the end a legal question that cannot depend—as *Eley* requires—on whether one lawyer has met her burden of proof or, for that matter, on the inevitably varying views of district courts based on the records before them. *Compare Reed v. District of Columbia*, 134 F. Supp. 3d 122, 129–30 (D.D.C. 2015) (holding that plaintiffs had not met their burden under *Eley*), *with Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 338–40 (D.D.C. 2015) (holding that plaintiffs had met their burden). Either IDEA litigation is as complex as Title VII, Rehabilitation Act,

and ADA litigation, or it is not—a question this court is best equipped to resolve.

Take, for example, Title VII litigation. During the past ten years, we have considered more than 200 Title VII cases and almost 30 IDEA claims. In the process, we have wrestled with the two statutes and their regulations, reviewed an enormous variety of evidentiary records, read hundreds of briefs, and observed the performance of many lawyers—some more skilled than others. Based on my own experience hearing dozens of these cases and authoring opinions in many, I think it quite obvious that IDEA litigation is as complex as Title VII litigation.

Like Title VII litigation, IDEA litigation arises under a complicated statutory framework, supplemented by detailed regulations. *See, e.g.*, *K.A. ex rel. F.A. v. Fulton County School District*, 741 F.3d 1195, 1201 (11th Cir. 2013) (describing the IDEA as "a detailed, complex statute" with a "complex procedural apparatus" for ensuring a free and appropriate education). One need look no further than the decisions of the Supreme Court to appreciate the thorny questions of statutory interpretation that lie at the heart of IDEA litigation. *See, e.g.*, *Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516, 519, 522 (2007) (interpreting the IDEA's "interlocking statutory provisions" to determine whether the statute "accords to parents rights of their own that can be vindicated in court proceedings"); *Honig v. Doe*, 484 U.S. 305, 308, 323 (1988) (holding that the "stay-put" provision in the IDEA's predecessor, the Education of the Handicapped Act, prevented schools from excluding students with disabilities from school for "disruptive conduct growing out of their disabilities"). We too have addressed many such issues. *See, e.g.*, *Leggett v. District of Columbia*, 793 F.3d 59, 62 (D.C. Cir. 2015) (examining when a parent

who "send[s] her child to a private school" may be reimbursed under the IDEA); *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 523 (D.C. Cir. 2005) (interpreting the IDEA's remedial provision).

IDEA and Title VII litigation share many other complexities. Both involve sophisticated non-legal subjects: in Title VII litigation, statistics, employment testing, and workplace compensation; in IDEA litigation, child psychology, speech and language pathology, occupational therapy, physical therapy, and special education curricula. Both types of litigation rely heavily on experts in a variety of fields: in Title VII, statisticians and psychologists; in IDEA, childhood development specialists, psychiatrists, pathologists, and experts in educational options for children with disabilities. Finally, both types of litigation often involve complex organizations: large companies in Title VII cases; large public school systems (here DCPS) in IDEA cases.

To be sure, many IDEA cases, like the ones at issue here, are relatively small. But that is also true of Title VII cases. *See, e.g.*, *Robbins v. District of Columbia*, 650 F. App'x 37 (D.C. Cir. 2016); *Kelly v. Mills*, No. 10-5049, 2010 WL 5110238 (D.C. Cir. Dec. 14, 2010). More important, even small IDEA claims require lawyers with non-legal knowledge and specialized legal skills, as the declarations in these cases demonstrate. *See, e.g.*, *Reed v. District of Columbia*, No. 14-1887, ECF No. 18-2 at 1 (D.D.C. Aug. 13, 2015) ("Every [IDEA] case requires knowledge of education policies, procedures, techniques, best practices, records, and administration . . . . A competent IDEA litigator must know enough [about specialized] disciplines to understand and critique evaluations, cross-examine experts, and work with one's own experts."). IDEA cases, moreover, can be as large, complex, and long-lasting as the most complicated Title VII

cases. *Compare Blackman v. District of Columbia*, 633 F.3d 1088, 1089 (D.C. Cir. 2011) (describing the "latest . . . chapter in the saga stretching back at least forty years of families with disabled children seeking free appropriate public education from the District of Columbia with frequent repair to administrative and judicial remedy"), *with Shea v. Kerry*, 796 F.3d 42, 50–56 (D.C. Cir. 2015) (tracing the "long history" of a fourteen-year-old Title VII claim against the State Department).

For these reasons, were this panel not bound by *Eley*, I would hold, as a matter of law, that IDEA litigation is sufficiently complex to warrant *Laffey* rates. *See Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring) ("[I]n my view, the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases."). Deeming IDEA litigation eligible for *Laffey* rates would comport with the Supreme Court's instruction that a reasonable fee is one "adequate to attract competent counsel," *Blum*, 465 U.S. at 893 (citation omitted), thereby advancing Congress's goal that "all children with disabilities" receive a free appropriate public education "designed to meet their unique needs." *Forest Grove School District v. T.A.*, 557 U.S. 230, 239 (2009) (citation omitted).